Mark WOJCIK, Plaintiff,

v.

COMMONWEALTH MORTGAGE CORPORATION, Defendant,

and

Federal Savings and Loan Insurance Corporation, Intervenor.

No. 89 C 2830.

United States District Court,
N.D. Illinois, E.D.

March 16, 1990.

Kenneth A. Grey, McKeown, Fitzgerald, Zollner Buck Sangmeister & Hutchinson, Joliet, Ill., for plaintiff.

Leon E. Lindenbaum, Lindenbaum, Coffman, Kurlander, Brisky & Hayes, Ltd., Chicago, Ill., for defendant and intervenor.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Intervenor, Federal Savings and Loan Insurance Corp. (FSLIC), and defendant, Commonwealth Mortgage Corp. of America (Commonwealth), (hereinafter collectively "defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure move for entry of summary judgment in their favor. The complaint is in two counts: in Count I plaintiff contends that the plaintiff and Commonwealth had an employment contract pursuant to Commonwealth's employment handbook (handbook) and corporate policies and procedure manual (manual) which Commonwealth breached by terminating plaintiff's employment without taking the performance, improvement, and disciplinary procedures or giving the notice required by such handbook and manual; and, in Count II plaintiff contends that he relied upon the unambiguous promises of the handbook and manual to his detriment because his employment was terminated by Commonwealth without taking the performance and disciplinary procedures or giving the notice promised therein. Plaintiff objects to the granting of the motion for summary judgment on the ground that an issue of fact exists as to whether or not the handbook and manual afforded plaintiff contain very specific and mandatory procedures which were antecedent to his termination for poor production and poor attitude, the reasons given for plaintiff's termination.

It is the contention of defendants that the handbook and manual fairly disclaim any purpose to bind the parties and do not contain any specific relevant procedure or policy for notice of termination. They maintain that as a matter of law the handbook and manual do not support a claim of a breach of contract or a claim of promissory estoppel for failure to give such notice.

The court has carefully examined the handbook and the manual to determine whether or not they establish any rights in plaintiff antecedent to his termination for poor performance and poor attitude. The interpretation of documents purporting to be or alleged to be contracts is a question of law to be determined by the court. *Premier Electrical Construction Co. v. LaSalle National Bank*, 132 Ill.App.3d 485, 87 Ill.Dec. 721, 477 N.E.2d 1249 (1984). But see *Scaramuzzo v. Glenmore Distilleries, Co.*, 501 F.Supp. 727, 732 (N.D.Ill. 1980).

■ The court notes that the handbook provides:

The language in this handbook is not intended to create a contract between the Company and any of its employees.

It is clear from that language that no employee could reasonably believe that any provision of the *handbook* could be relied upon as a promise by either the employer or employee. Such unambiguous disclaimers have been held to prevent the formation of a contract. *Moore v. Illinois Bell Telephone Company*, 155 Ill.App.3d 781, 108 Ill.Dec. 358, 508 N.E.2d 519 (1987); *DeFosse v. Cherry Electrical Products Corp.*, 156 Ill.App.3d 1030, 109 Ill.Dec. 520, 510 N.E.2d 141 (1987). No provisions of the handbook supersede the provisions of the policy manual.

■ The policy manual provides:

In no event will the hiring of an employee be considered as creating a contractual relationship between the employee and the company. Their relationship is defined as 'employment at will' where either party, with appropriate notice, may dissolve the relationship.

This passage is of problematic interpretation because an employment at-will is contractual, being based upon an employment contract having certain characteristics. *See Enis v. Continental Illinois National Bank and Trust Company of Chicago*, 582 F.Supp. 876 (N.D.Ill.1984), *aff'd*, 795 F.2d 39 (7th Cir.1985).

It is the opinion of the court that the first sentence of the last quoted paragraph, though not surplusage, is irrelevant to the allegations of the complaint because it is not the act of *hiring* upon which plaintiff bases his cause of action. Rather, it is that the policy manual *statements* provide clear enough promises that plaintiff could reasonably believe an offer had been made by his commencing or confirming to work after learning of the statements. *See Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

■ So what remains for the court's determination is the legal significance of the second sentence of that paragraph. It provides:

Their relationship is defined as 'employment at will' where either party, with appropriate notice, may dissolve the relationship.

Under Illinois law, an employment contract, whether written or oral, which is of no specific duration is considered an at-will contract and may be terminated by either party with or without cause *subject only to independent contractual* or statutory provisions. (*Enis v. Continental Illinois National Bank and Trust Co. of Chicago*, 582 F.Supp. 876 (N.D.Ill.1984), *aff'd*, 795 F.2d 39 (7th Cir.1985).) (Emphasis added.) Thus, the mere existence of an employment at-will relationship, terminable upon appropriate notice, does not foreclose the fact that other provisions in the policy manual may impose additional duties upon the parties unrelated to the fact that the employment did not have a term of duration other than that of appropriate notice. To the extent plaintiff alleges that he was terminated without appropriate notice his complaint states a cause of action for breach of an employment at-will contract conditioned upon appropriate notice of termination, to use the description of the relationship contained in this company's policy manual.

■ The court must look to the language of the policy manual to determine whether it gives rise to any other rights to the plaintiff. Each set of procedures in the policy manual is prefaced by a statement called "Purpose". So as not to render any part of the policy manual surplusage, each procedure thereunder must be viewed in the context of the stated "Purpose". One series of procedures relied upon by plaintiff is designated "HR 510" and has as its stated "Purpose [t]o establish a consistent system of handling misconduct issues *that will give employees the opportunity to correct their conduct* and that will also provide the necessary documentation to resolve issues". (Emphasis added.) H.R. 510 entitled "Disciplinary Guidelines" distinguishes between "Conduct" and "Performance" issues and deals for the most part with conduct issues. However, even though the "Purpose" preface refers to "conduct" and "misconduct" and the body of the provisions distinguishes between "conduct" and "performance" issues, nonetheless, the provision contains the following language:

2. Appropriate measures for correcting performance problems are coaching, memoranda outlining specific steps for improvement, and probation. Termination for performance issues occurs only after the employee has been given the opportunity and support necessary for improvement.

H.R. 510, I.B. 2.

It is the opinion of the court that the purpose of H.R. 510 is to establish a system within the company that gives employees the right to an opportunity to correct their "conduct", albeit for "performance" deficiencies. The court finds that an employee could reasonably consider the quoted statement a clear enough promise by the company to constitute an offer which he accepted by commencing or continuing to work.

By contrast, H.R. 202, also relied upon by plaintiff, clearly has as its purpose "[t]o *provide management* with termination guidelines that will promote effective employee relations and comply with legislation". (Emphasis added.) Thus, it would be unreasonable for an employee to consider any of the provisions thereunder to constitute a promise sufficient to be an offer by the company. Furthermore, none of the provisions thereunder are inconsistent with the purpose of H.R. 202 so as to create an ambiguity and, thus, a question of fact sufficient to defeat a motion for summary judgment. *Koch v. Illinois Power Co.*, 175 Ill.App.3d 248, 124 Ill.Dec. 461, 529 N.E.2d 281 (1988), appeal den. 124 Ill.2d 555, 129 Ill.Dec. 150, 535 N.E.2d 915.

ORDERED: Defendant's motion for summary judgment is granted in part, as to H.R. 202 and the provisions in the handbook; and denied in part, as to the provision requiring appropriate notice of termination and as to the provisions of H.R. 510 requiring appropriate measures for correcting performance problems within H.R. 510 I.B.